UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BARBARA M., :
    Plaintiff, :
     :
v. : C.A. No. 18-73PAS
     :
NANCY A. BERRYHILL, :
Acting Commissioner of the Social Security :
Administration, :
    Defendant. :

**MEMORANDUM AND ORDER**

Patricia A. Sullivan, United States Magistrate Judge.

    Invoking 42 U.S.C. §§ 405(g), 1383(c)(3) of the Social Security Act (the "Act"), Plaintiff Barbara M., a person closely approaching retirement age, applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 21, 2015. In her disability applications, Plaintiff alleged that, since February 19, 2015, the day following the denial of her prior disability application, she has been disabled due to neck and back pain, debilitating migraine headaches, the Epstein-Barr virus/chronic mononucleosis, depression and anxiety. The case is now before the Court on Plaintiff's motion for summary judgment challenging the decision of the Administrative Law Judge ("ALJ") denying her applications. The Commissioner has filed a counter-motion, asking the Court to affirm. Their motions are pending before me on consent pursuant to 28 U.S.C. § 636(c)(1).

    Plaintiff has a college education and worked for many years as a ballet dancer and then as a dance instructor. Her final job before stopping work in 2012 was as a "Big Ticket/Sales Associate[] | Furniture Sales" at Macy's. Tr. 233. As relevant to this appeal from the adverse administrative decision of the Commissioner, Plaintiff relies on the two impairments found by the ALJ to be severe at Step Two – osteoarthritis of the spine and migraine headaches. See Tr.

26. In reliance on the assessment of the state agency file-reviewing physician expert at the initial phase (Dr. Youssef Georgy) and the orthopedist who testified as a medical expert at the hearing (Dr. Louis Fuchs), the ALJ found that, despite these impairments, Plaintiff retained the RFC[1] to perform light work with postural limitations resulting from degeneration in the cervical and lumbar spine. Tr. 29-32. Based on this RFC, the ALJ found that Plaintiff could still perform past relevant work as a furniture sales associate, "as per the Dictionary of Occupational Titles" ("DOT"). Tr. 32. Accordingly, the ALJ held that she was not disabled from the date of alleged onset to the date of the decision. Tr. 32-33.

Plaintiff has challenged the ALJ's decision on two grounds.

First, Plaintiff argued that the ALJ erred in finding that her subjective statements about "symptom severity and resulting functional limitations," and particularly regarding the limiting effects of the migraine headaches, were "not supported by the medical evidence, to the degree alleged." Tr. 30. In support of this argument, Plaintiff pointed to a sentence from the testimony of the medical expert, Dr. Fuchs, who said that it would be reasonable to conclude that cervical spine issues could cause headaches as described by Plaintiff.[2] See Tr. 58. The Commissioner asked the Court to affirm the ALJ's treatment of Plaintiff's subjective statements because Dr. Fuchs plainly opined only that severe migraine headaches could be caused by an impairment of the cervical spine. The Court agreed with the latter proposition, finding that the Fuchs statement is not a medical opinion that Plaintiff's actual cervical impairment in fact caused the actual migraine symptoms as Plaintiff described them, thereby amounting to medical evidence

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[2] To be precise, Dr. Fuchs responded, "yes," to the following question: "Would it be reasonable to conclude that cervical spine issues could lead to headaches like Ms. [M.] . . . complains of?" Tr. 58.

2

supporting her subjective statements.³ The Court also agreed with the Commissioner's argument that the ALJ appropriately relied on substantial evidence in determining the weight to give to Plaintiff's subjective descriptions of the impact of her migraine headaches.⁴ During the hearing on the parties' dueling motions for summary judgment held on February 8, 2019, the Court laid out the relevant background and ruled against Plaintiff and in favor of the Commissioner with respect to this argument. The reasoning on which the Court's ruling is based was stated on the record at the hearing, as summarized in this memorandum and order.

For her second argument, Plaintiff focused on the ALJ's Step Four determination that she remains capable of performing her past relevant work as a furniture sales associate. She argues that the ALJ erred in failing to resolve the conflict between the DOT, which classifies furniture sales as light work, and the testimony of the vocational expert ("VE") that, "in my opinion, I believe it is generally and usually performed at a medium exertional level." Tr. 63. At the hearing, the Court found Plaintiff's second argument to be far more substantive and took it under advisement. Having studied the law and the portions of the administrative record on which the parties rely,⁵ and particularly the applicable regulations and the Commissioner's interpretations

---

³ This is even clearer when the pivotal sentence is read in context with Dr. Fuchs's testimony that Plaintiff was neurologically intact on examination and that, with respect to headaches, "[she] has had very satisfactory examinations," so that "clearly light activities would be reasonable." Tr. 48. Put differently, the ALJ clearly and appropriately marshalled the Fuchs testimony as evidence confirming that serious headaches like Plaintiff's can be caused by neck problems (which Plaintiff had), but that Plaintiff's headaches, while severe, nevertheless permitted light work. Tr. 30-31.

⁴ In discounting Plaintiff's allegations that her headaches were so limiting as to preclude all work, the ALJ relied, *inter alia*, on Plaintiff's daily activities, as well as on the treating records of the neurologist, Dr. Arshad Iqbal, who found that the headaches were at least partly caused by Plaintiff's persistent overuse of pain medication, despite advice to stop given several years prior by treating physicians at Massachusetts General Hospital. Tr. 298-99, 408-09. The ALJ also properly relied on the opinions of Drs. Fuchs and Georgy, both of whom carefully considered the symptoms caused by the migraines and found Plaintiff capable of light work. Tr. 48, 92-94, 105-07.

⁵ During the hearing, the Court invited the parties to supplement the record with any additional law or other material that might be pertinent and advised that this memorandum and order would not issue until after February 22, 2019, to allow them time to do so. Neither party filed anything.

3

of the Act cited below, the Court now finds that the ALJ erred and concludes that the case must be remanded for further proceedings.

I.      **Background**

During the hearing, the ALJ called as a witness a VE, whose impressive curriculum vitae is in the record. Tr. 289-93. Much of the VE's testimony focused on Plaintiff's work as a dance instructor. Ultimately, the VE testified that the postural limitations that the ALJ had included in her hypothetical (and later would include in the RFC in her decision) would eliminate all prior work related to dance, both as "generally performed," confirmed by the DOT, which classifies dance teacher as heavy work, and as "actually performed" by Plaintiff. Tr. 59, 61; see 20 C.F.R. § 404.1560(b)(2)[6] (past relevant work inquiry focuses on work as "actually performed" or as "generally performed" in national economy). The ALJ accepted this opinion and did not find that Plaintiff could perform her prior work as a dance instructor. Tr. 32-33.

As to Plaintiff's other past work, as a furniture sales associate, the VE testified that "furniture sales associate" is classified in the DOT under 270.357-030, which provides that it is light work with limited postural requirements. Tr. 60; DOT 270.357-030, 1991 WL 672448 (4th ed. rev. 1991). In response to the ALJ's hypothetical questions regarding what "past work" could be performed by a person capable of doing light work with and without postural limitations, the VE opined that such an individual would be able to work as a furniture sales person "according to the *DOT*." Tr. 60-61. In describing the DOT classification, the VE injected into his answer that "[t]hat's [furniture sales] often also found at a medium exertional

---

[6] The Social Security Administration has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite to one set only. See id.

4

level in many settings." Tr. 60. Later in the testimony, the VE directly disagreed with the DOT with respect to the job of furniture sales associate:

> [T]he DOT has furniture sales, a person at a light exertional level. However, it has been my experience that a lot of times furniture salespeople are required to move around furniture . . . which would put it into a medium exertional level. So it's not uncommon for it to be performed at a medium exertional level.

Tr. 62. When directly asked by Plaintiff's attorney, the VE gave his opinion: "my opinion is, is that it's [furniture sales] generally performed at a medium exertional level." Id.

With respect to the level at which Plaintiff actually performed her job as a furniture sales associate, the ALJ and the VE both questioned her about what she was required to do. In response, she explained that she was required to move around furniture and big carpets and to stand on her feet for up to twelve hours a day. Tr. 62-63. In her brief, the Commissioner acknowledges that the VE's testimony establishes that Plaintiff actually performed furniture sales at the medium exertional level. ECF No. 16 at 10.[7]

In the resulting decision, the ALJ made the RFC determination that Plaintiff is able to perform light work, with certain postural limitations. Tr. 29. At Step Four, the ALJ focused on the job of furniture sales associate "as generally" performed. In considering Plaintiff's ability to do this job as "generally performed," the ALJ acknowledged the direct conflict between the DOT and the VE's opinion, in that the VE testified that the DOT classifies furniture sales as light, but declined to adopt that classification as an accurate reflection of how the work is "generally performed." Instead, as the ALJ noted, the VE expressed the inconsistent opinion that this work

---

[7] The ALJ never directly asked the VE for an opinion regarding the exertional level of the job of furniture sales as Plaintiff actually performed it. Rather, she asked only what past work would be possible for an individual limited to light work. The VE's answer that furniture sales would be allowed only "according to the *DOT*," Tr. 60, necessarily means that Plaintiff could not work in furniture sales as actually performed. This is confirmed by the ALJ's decision, which does not find that Plaintiff could work in furniture sales as she actually performed that job. Tr. 32-33. As noted in the text, the parties do not dispute that Plaintiff could no longer work as a furniture sales associate as she actually performed the job because that work was done at the medium exertional level, while Plaintiff's RFC permits only light work.

5

is "generally performed at the medium exertional level." Tr. 32. Nevertheless, with no explanation for why she was apparently rejecting the opinion of the VE, the ALJ then found that Plaintiff could perform this work "as per the [DOT]." Id. Inconsistent with this apparent rejection of the VE, the ALJ also stated that she was relying on the opinion of the VE in reaching the conclusion that "the demands of the above job [furniture sales associate] would fit within the parameters of the [RFC] as assessed . . . ." Tr. 33. Missing from the ALJ's decision is the critical finding that, as limited by her RFC, Plaintiff could still perform the prior work of furniture sales associate "as generally performed" in the national economy. See 20 C.F.R. § 404.1560(b)(2).

The parties do not dispute that this issue is potentially material: because of Plaintiff's age, and subject to other characteristics that would require further development at Step Five, it is possible that the determination that the furniture sales associate job is "generally performed" at the medium exertional level would compel the conclusion that Plaintiff was disabled during the relevant period.

**II.    Law and Analysis**

At Step Four, the ALJ is required to establish an RFC and to determine whether, in light of that RFC, the claimant can still perform at least some "past relevant work." Tucker v. Berryhill, No. 2:16-cv-00301-JHR, 2017 WL 2539750, at *2 (D. Me. June 11, 2017) ("A claimant is not disabled at step four if the claimant can perform [her] past relevant work either as the claimant actually performed it or as generally performed in the national economy.") (citation omitted). The Step Four focus must be on whether past relevant work is available either as "actually performed" or as it is "generally performed." Sherry v. Berryhill, C.A. No. 16-157S, 2017 WL 3278957, at *7 n.6 (D.R.I. June 12, 2017), adopted, C.A. No. 16-157S, 2017 WL

3278866 (D.R.I. Aug. 1, 2017). If past relevant work remains possible, the analysis stops with a finding of not disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

To make the past-relevant-work determination, the operative regulation requires the ALJ to gather information about the prior work by questioning the claimant, as well as by procuring testimony from a VE, or by relying on other resources, such as the DOT.[8] 20 C.F.R. § 404.1560(b)(2). The regulation specifically directs that, "[a] vocational expert or specialist may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy." Id. In making this determination, "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, at *3 (1982). This interpretation contemplates that the DOT may be considered, "in some cases," as "supplementary or corroborative information . . . on the requirements of the work as generally performed in the economy." Id. It makes clear that the ALJ's decision must explain the rationale "so that a clear picture of the case can be obtained." Id. at *4. It requires that "[t]he explanation of the decision [that the claimant can meet the demands of a past relevant occupation] must . . . reconcile any significant inconsistencies" and "must contain . . . specific findings of fact . . . as to the physical and mental demands of the past job/occupation." Id. (emphasis supplied).

---

[8] The DOT has been frequently criticized as obsolete. See, e.g., Dimmett v. Colvin, 816 F.3d 486, 489 (7th Cir. 2016); Sams v. Berryhill, Case No. 1:17cv15-CAS, 2017 WL 3974239, at *7, 8 (N.D. Fla. Sept. 8, 2017); Sinclair v. Berryhill, 266 F. Supp. 3d 545, 560 (D. Mass. 2017); Poissant v. Colvin, No. 2:13-cv-162-GZS, 2014 WL 1686816, at *7 n.6 (D. Me. Apr. 29, 2014). However, the Social Security Administration has not abandoned its use; therefore, as the regulation requires, it remains appropriate for an ALJ to rely on it as evidence. See Poissant, 2014 WL 1686816, at *7 n.6.

7

A more recent interpretation provides that, "[i]n making disability determinations, we rely primarily on the DOT . . . ." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). The purpose of this interpretation is explained in the preamble: to "emphasize[] that before relying on VE or [vocational specialist ("VS")] evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the [DOT], . . . and Explain in the determination or decision how any conflict that has been identified was resolved." Id. at *1. Accordingly to SSR 00-4p, "[o]ccupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled." Id. at *2; see id. at *4 ("When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled."). This interpretation is silent regarding what the ALJ must do when there is an apparent unresolved conflict between the DOT and the VE, but the ALJ opts to rely on the DOT and not on the VE. However, it is also clear that "[n]either the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict," id. at *2, as well as that, "[i]f the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict," id. at *4.

With this background sketched in, the Court first resolves a preliminary matter. At the hearing, the Commissioner argued that the VE's testimony may be interpreted as being equivocal

so that there was no conflict for the ALJ to resolve. This argument founders in the face of the testimony itself – when the VE was finally asked a clear question, he gave an unambiguous answer: "my opinion is, is that it's [furniture sales] generally performed at a medium exertional level." Tr. 62. The argument sinks given the ALJ's decision, which unambiguously sets out the conflict: "At hearing, the [VE] testified that this job is characterized by the [DOT] as . . . light exertional level but generally performed at the medium exertional level." Tr. 32. The Court rejects the proposition that there was no conflict between the testimony of the VE and the DOT regarding the exertional requirements of the furniture sales associate job.

Turning to the substantive dispute, the Court begins by acknowledging the limited nature of judicial review in this context – that is, the Court must examine whether the ALJ properly determined the exertional level at which the job of furniture sales associate is "generally performed," 20 C.F.R. § 404.1560(b)(2), and may not substitute its judgment for that of the Commissioner. Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *7 (D.R.I. Mar. 3, 2015) ("[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts.") (citation omitted). In considering this issue, the Commissioner is right that the ALJ did not err in accepting the DOT as competent self-authenticating evidence of how a job is generally performed.[9] See Washington v. Comm'r of Soc. Sec., 906 F.3d 1353, 1364-67 (11th Cir. 2018) (discussing importance of DOT in establishing functional requirements for specific jobs). However, the DOT is not vested with the force of a presumption, but rather is merely evidence on an equal footing with the opinion of the VE. SSR 00-4p, 2000 WL 1898704, at *2 ("Neither the DOT nor the VE or VS evidence automatically 'trumps' when there is a conflict."). The

---

[9] The Commissioner correctly points out that, in this Circuit at Step Four, it is well-settled that an ALJ may rely on the DOT as evidence of its content, without the need for a VE or other authenticating witness. Gray v. Heckler, 760 F.2d 369, 372 (1st Cir. 1985); see Edwards v. Colvin, No. 2:13-cv-419-JHR, 2015 WL 46071, at *2-3 (D. Me. Jan. 2, 2015) (DOT description of past work as consistent with RFC is sufficient to sustain ALJ's Step Four conclusion).

9

governing regulation is also plain that evidence concerning the physical demands of past relevant work as generally performed in the national economy is a matter on which a VE may offer relevant testimony. 20 C.F.R. § 404.1560(b)(2). Thus, like the DOT, the VE's opinion is competent evidence on the pivotal point. The Court must decide whether the ALJ resolved the conflict between them in a manner that comports with applicable law. Richardson v. Perales, 402 U.S. 389, 399 (1971) (trier of fact has the duty to resolve conflicting evidence); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222-23 (1st Cir. 1981) (same).

In urging the Court to affirm the ALJ, the Commissioner's focus is SSR 00-4p and its requirement that an ALJ must procure an explanation for an inconsistency between the DOT and a VE and must affirmatively resolve the conflict in a case where the ALJ has decided to reject the DOT and rely on the VE. SSR 00-4p, 2000 WL 1898704, at *4. She contends that SSR 00-4p may be interpreted to mean the converse – that the ALJ need not seek or provide any explanation if the conflict is resolved by rejecting the VE and relying on the DOT.

The fatal flaws in this argument are several. First, the ALJ did not resolve this conflict at all; rather, she erred in that she skipped over the requirement that she must make a finding of fact regarding the demands of a furniture sales associate as "generally performed." See SSR 82-62, 1982 WL 31386, at *3-4. That is, the decision jumps from the juxtaposition of the DOT ("light") and the VE's opinion ("medium") to the finding that Plaintiff can work as a furniture sales associate "as per the [DOT]." Tr. 32-33. Second, contrary to the mandate that a decision on the claimant's "[p]ast [r]elevant [o]ccupation" must clearly explain "how specific evidence leads to a conclusion" and must reconcile inconsistencies, SSR 82-62, 1982 WL 31386, at *3-4, the ALJ's decision reveals nothing regarding how she reached the decision to credit the DOT over the VE's opinion that the job of furniture sales associate is "generally performed" at the medium level.

See 20 C.F.R. § 404.1560(b)(2) (determination of physical demands of past work is made by reference to information from claimant and VE, as well as "other resources, such as the [DOT]"). Ultimately, the Commissioner's argument fails because SSR 00-4p does not go so far as she tries to stretch it. Its focus is on an ALJ who decides to credit the VE over the DOT; it is silent regarding the circumstance of this case, where the ALJ relied on the DOT over a squarely contrary VE opinion. Read holistically with SSR 82-62, as well as with the relevant regulations, it is plain that SSR 00-4p was not intended to mean that an ALJ can ignore a conflict between the DOT and the opinion of a qualified VE, fail to explore the reasons for the conflict, and instead rely without explanation on the DOT.[10]

The First Circuit has directed "that courts should ensure 'a just outcome' in Social Security disability claims." Mary K v. Berryhill, 317 F. Supp. 3d 664, 667 (D.R.I. 2018) (quoting Pelletier v. Sec'y of Health, Educ. & Welfare, 525 F.2d 158, 161 (1st Cir. 1975)). That is, the "Act is to be construed liberally to effectuate its general purpose of easing the insecurity of life." Rodriguez v. Celebrezze, 349 F.2d 494, 496 (1st Cir. 1965); see Cohen v. Sec'y of Dep't of Health & Human Servs., 964 F.2d 524, 531 (6th Cir. 1992) ("[I]t is well to bear in mind that '[t]he Social Security Act is a remedial statute which must be 'liberally applied.'"). To fulfill the Act's broad and beneficent objects, courts are "counsel[ed] to err on 'inclusion rather than exclusion.'" Borino v. Astrue, 917 F. Supp. 2d 166, 174-75 (D.R.I. 2013) (quoting Marcus v. Califano, 615 F.2d 23, 29 (2d Cir. 1979)).

---

[10] Such an interpretation of SSR 00-4p ignores 20 C.F.R. § 404.1560(b)(2), which provides that testimony from a VE is an appropriate way to gather information about past work, as well as 20 C.F.R. § 404.953(a), which requires the ALJ's decision to give "the findings of fact and other reasons for the decision." These substantive regulations have the force and effect of law; by contrast, SSR 00-4p is an agency's policy interpretation and is accorded deference, but does not have the force of law. Batterton v. Francis, 432 U.S. 416, 425 (1977); Gen. Motors Corp. v. Ruckelshaus, 724 F.2d 979, 985 (D.C. Cir. 1983), reh'g granted & opinion vacated, (Mar. 22, 1984), on reh'g, 742 F.2d 1561 (D.C. Cir. 1984) ("[o]rdinarily, administrative interpretations are given important but not controlling significance").

Guided by these principles, the Court finds that the ALJ erred in determining that Plaintiff's RFC left her with the ability to work as a furniture sales associate because she failed properly to consider the testimony of a qualified VE that, as "generally performed," that job can be done only by someone capable of medium work. See 20 C.F.R. § 404.1560(b)(2). The ALJ failed to include the mandatory finding as to the physical demands of the past job, as well as the mandatory written rationale that reconciles "any significant inconsistencies." SSR 82-62, 1982 WL 31386, at *4. She failed to comply with the SSR 00-4p mandate that the ALJ has "an affirmative responsibility" to ask about the reasons underlying any conflict between the DOT and the VE's opinion. SSR 00-4p, 2000 WL 1898704, at *4; see Washington, 906 F.3d at 1363. The matter must be remanded for further proceedings to address these deficits.

## III. Conclusion

Based on the foregoing, Plaintiff's motion for summary judgment (ECF No. 14) is granted and the Commissioner's motion for summary judgment (ECF No. 16) is denied. Therefore, the Clerk shall enter Final Judgment in favor of Plaintiff, reversing the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g) and remanding this matter for further administrative proceedings consistent with the Court's ruling.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
February 27, 2019